FILED

2013 Sep-25  AM 11:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **DON CHAMBERS**, | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO. 7:12-CV-01859-KOB** |
| | ) |
| **MICHAEL J. ASTRUE**, | ) |
| **Commissioner of the Social** | ) |
| **Security Administration** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

## I. INTRODUCTION

On June 24, 2008, the claimant applied for supplemental security income under Title XVI of the Social Security Act. The claimant alleged disability beginning on June 24, 2008, because of chronic back pain and a "mental condition" stemming from his prior incarceration. (R. 135). The Social Security Administration denied his application on September 11, 2008. (R. 57). The claimant filed a timely request for a hearing on October 13, 2008, and an Administrative Law Judge held a hearing on July 8, 2010. (R. 64).

In an opinion dated August 19, 2010, the ALJ found that the claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act and, thus, was ineligible for supplemental security income. (R. 29). The claimant filed a timely request for review of that decision to the Appeals Council, and the Social Security Administration Appeals Council denied the claimant's request for review on March 14, 2012. (R. 1).  The claimant has exhausted his administrative

1

remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The court must review the following issues: (1) whether the ALJ properly applied the Eleventh Circuits's pain standard; (2) whether the ALJ erred by rejecting the opinion of Dr. Allen, a treating physician, and failing to re-contact him for clarification of his opinion; and (3) whether the ALJ erred by failing to consider the claimant's combined impairments.

## III. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if substantial evidence supports the factual conclusions. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including the determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 1999. However, this court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971).

This court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings" *Walker*, 826 F.2d at 999. A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but also must view the

2

record in its entirety and take into account evidence that detracts from the evidence on which the

ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

### IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person cannot "engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  To make this

determination the Commissioner employs a five-step, sequential evaluation process.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments
> set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative answer
> to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986);  20 C.F.R. §§ 404.1520, 416.920.

When evaluating pain and other subjective complaints, the Commissioner must apply the

Eleventh Circuit's pain standard. The Commissioner must determine whether:

> (1) there is evidence of an underlying medical condition; and *either*
> (2)objective medical evidence confirming the severity of the alleged pain arising from the
> condition *or*
> (3) that the objectively determined medical condition is of such a severity that it can
> reasonably be expected to give rise to the alleged pain.

 *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (emphasis added); *Holt v. Sullivan*, 921

F.2d 1221, 1223 (11th Cir. 1991); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). The

ALJ does not have to recite the pain standard verbatim, rather the ALJ must make findings that

indicate that the standard was applied. *Holt*, 921 F.2d at 1223. A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561. The ALJ must articulate reasons for discrediting the claimant's subjective testimony. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). If the ALJ does not articulate his reasons for discrediting, then the court must accept the claimant's testimony as true. *Id.*

Further, in evaluating pain, the Commissioner may consider the claimant's ability to perform certain activities of daily living (ADLs), as well as the impact of such activities on the claimant's credibility. 20 C.F.R. §§404.1529 (c)(3)(i), 416.929(c)(3)(i); *see also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (finding that ADLs may be relevant to the fourth step of the sequential process).

The ALJ must state with particularity the weight given different medical opinions, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ must give treating physicians substantial weight, and may only credit the opinion of a consultative physician above that of a treating physician for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" for rejecting a treating physician's testimony may include occasions when such evidence is wholly conclusory, unaccompanied by objective medical evidence, or contradicted by other medical evidence. *Crawford*, 363 F.3d at 1159; *Jones v. Dept. of Health & Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).

4

An ALJ is not *required* to re-contact a treating physician but *may* re-contact a treating physician. *See* 20 C.F.R. § 404.1520b, 416.920b(c)(1) (emphasis added). To fulfill her duty to develop the record, an ALJ should re-contact a doctor if the doctor is a treating source, the treating source's opinion is unclear on an issue reserved for the commissioner, and the ALJ is not able to ascertain the basis for the opinion from the record. SSR 96-5p. If the ALJ cannot make a determination based on the record, she may decide to re-contact a doctor. *See Johnson v. Barnhart*, 138 Fed. Appx. 186, 189 (11th Cir. 2005) ("Medical sources should be re-contacted when the evidence received from the source is inadequate to determine if the claimant is disabled."); *Skarbeck v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("An ALJ need re-contact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled.").

Also, where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. *Jones v. Dept. of Health & Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991). If the Commissioner finds a medically severe combination of impairments, she must consider the impact of the medically severe combination of impairments throughout the disability determination process. *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993).

## V. FACTS

The claimant has a ninth grade education and was forty-seven years old at the time of the administrative hearing. (R. 37). He has past work experience as a pizza maker; roofer; loader in a parts warehouse; fork-lift driver; floor cleaner; derek worker; and laborer. (R. 159). The

claimant alleges that he was disabled by severe back pain, as well as mental conditions stemming from his prior incarcerations from 1994 to 2003 and again from 2004 to 2008. (R. 39-40, 135).

*Physical Limitations*

On, August 20, 2008, the claimant visited Whatley Health Services and complained of back pain. The claimant denied receiving any prior treatment for his pain. Dr. Burton referred the claimant for x-rays and recommended that he return for a follow-up within a week.  (R. 213). On August 25, 2008, a Whatley Health Services nurse documented that the claimant's x-ray result showed minimal disc degeneration and no other significant findings[1]. (R. 214).

On September 9, 2008, Dr. James R. Saxon, M.D. evaluated the claimant at Indian Hills Medical Center at the request of the Disability Determination Service.  Dr. Saxon noted that the claimant reported that on the day of his visit his back "essentially [felt] normal."  Dr. Saxon's physical examination and report showed that the claimant was in good overall physical condition with no acute distress, that the claimant could squat, rise, and walk on his heels and toes, that he did not identify evidence of complete disability, and that he diagnosed the claimant with lower back pain. (R. 192-93).

At Dr. Saxon's request, on the same day, the claimant underwent a MRI of his lumbar spine at the Radiology Clinic. Dr. Saxon noted no evidence of fracture or subluxation; normal disc spaces and vertebral heights; and no acute skeletal abnormality.  (R. 194). Dr. Saxon also completed a range of motion chart for the Disability Determination Service that showed a normal range of motion in all areas and normal dexterity and grip strength. (R. 195-96).

---

[1]The identity of the attending physician or nurse cannot be determined based on the signature contained in the record.

On November 3, 2008, the claimant missed his follow-up appointment with Whatley Health Services.  (R. 216).

On a May 21, 2009,  Dr. Richard Kennedy evaluated the claimant and noted that the claimant indicated that he had given blood and was notified that he might have hepatitis C.  Dr. Kennedy noted that the claimant reported feeling weak and without energy for several weeks. Dr. Kennedy ordered a blood test and diagnosed the claimant with hepatitis C as a result of a blood transfusion years ago. Dr. Kennedy also noted the claimant's lumbar pain and spasms. (R. 218-225).

On June 11, 2009, the claimant followed up with Whatley Health Services for his hepatitis C as well as his back pain. (R. 227). Dr. Richard Kennedy referred the claimant to the Division of Infectious Diseases at the University of Alabama at Birmingham. On June 18, 2009, Dr. Scott Parker noted that the claimant's hepatitis C infection had been untreated for approximately twenty-five years without presence of any associated symptoms. (R. 230).  Dr. Parker indicated that because of the claimant's age, gender, and the duration of the infection, he suffered high risk of advanced fibrosis with progression to cirrhosis or end-stage liver disease during his lifetime without appropriate therapy.  Dr. Parker stated that the claimant needed further evaluation, including ultrasound imaging to assess the state of his disease. (R. 230-32).

On September 3, 2009, Dr. Jim Allen examined the claimant for the first time and noted the claimant's hepatitis C potentially originated from a blood transfusion, and also noted that the claimant had arthritis and suffered from lower back pain radiating through his right thigh. Dr. Allen noted no history of over-use of the claimant's thigh.  He noted that the claimant received physical therapy for his back from Dr. Burton, but also that the claimant stated that neither

therapy nor medication helped him.  Dr. Allen diagnosed the claimant with chronic back pain and hepatitis C, and he prescribed the claimant Decadron and Depo-Medrol.  Dr. Allen referred the claimant to UAB for low-cost or free treatment for his hepatitis C. (R. 245).

Dr. Allen examined the patient again on November 24, 2009 and February 16, 2010. (R. 247). Dr. Allen again noted history of back pain and hepatitis C.  Under his plan notes, Dr. Allen indicated that the claimant scheduled treatment for his hepatitis at UAB.  Dr. Allen refilled the claimant's prescriptions and recommended an MRI of the claimant's lumbar spine. (R. 249).

On December 20, 2009, Dr. Allen completed a questionnaire regarding the claimant's medical condition and noted that the claimant had been his patient for four months; that the claimant could not sustain an eight hour work day; and that the claimant's condition was expected to last twelve months or longer at the current level of severity. (R. 240).

On Dr. Allen's recommendation, Dr. Rafael Contreras, M.D. ordered an MRI of the claimant. On February 17, 2010, the claimant's MRI showed appropriate alignment of the claimant's lumbar spine with some degenerative change.  Specifically, the MRI indicated a mild disc-based bulging that appeared to contact the L3 nerve root in lateral space; a similar bulging associated with mild bilateral neural foraminal narrowing; and mild narrowing of the central spinal canal, with the right side affected more than the left. (R. 241).

The claimant visited Whatley Health Services for progress visits on March 19, 2010; April 16, 2010; and May 14, 2010. The visit notes indicated that the claimant suffered from hepatitis C; back pain; and noted disc bulging at L3-L5. (R. 251-52). The April 16, 2010 notes indicate that the claimant had lost 18 pounds since September 2009.  The claimant failed to appear at a May 11, 2010 appointment. (R. 256). On the May 14, 2010 visit, Dr. Allen indicated

8

that the claimant resumed smoking approximately four months prior to the examination, which might have affected his weight loss. (R. 258).

*Mental Limitations*

On September 3, 2008, Dr. Raj L. Phoha, Ph.D., a consulting psychologist, evaluated the claimant at the Disability Determination Service's request. Dr. Phoha noted that the claimant reported a history of severe substance abuse. Dr. Phoha noted that the claimant used an average level of eye contact and appropriate facial expressions; that he was attentive; and that the tone and rate of his speech were normal. Dr. Phoha indicated that the claimant possessed an average level of general knowledge and had good recent memory. Dr. Phoha noted that the claimant has a "fair level of attention and concentration." (R.188-89).

He also reported that the claimant denied ever having had any suicidal or homicidal intention or plan, and that the claimant did not report any delusions or hallucinations. Dr. Phoha noted that the claimant stated that "a long time ago" when he was under the influence of drugs he believed someone was in his attic "who was trying to hurt him." Dr. Phoha noted that the claimant's daily activities included few household chores; mostly sitting outside or watching television; and shopping and visiting his family and friends. The claimant also reported to Dr. Phoha that, except for back pain, he did not have any medical problems. (R. 189-90).

Dr. Phoha listed no disorders under axis I but diagnosed the claimant with anti-social personality disorder under axis II. Under axis IV, Dr. Phoha listed psychological stressors including serious legal problems, no steady income, and a history of serious alcohol and drug abuse beginning at age 12. Dr. Phoha noted that the claimant has a serious history of substance abuse; trouble with law enforcement; good recent memory; and reported back pain. Dr. Phoha

stated that he could not comment on the seriousness of the claimant's alleged medical condition. (R. 190).

On September 9, 2008, at the request of the Disability Determination Service, Dr. James R. Saxon, M.D. examined the claimant and noted the claimant's history of substance abuse and use of illicit substances.[2]  He noted that the claimant was in no acute distress at the time of the examination and appeared well-developed and well-nourished. Dr. Saxon recorded that the claimant allegedly experienced auditory hallucinations occasionally that told him to "do wrong." Dr. Saxon's official diagnosis included lower back pain and a history of auditory hallucinations suggesting probable schizophrenia.  Dr. Saxon also noted that he considered all of the medical evidence of record collected by DDS in his overall assessment of the claimant. (R. 192-93).

On September 11, 2008, Dr. Robert Estock interviewed claimant and completed a psychiatric review technique form at the request of the Disability Determination Service.  Under the medical dispositions portion of the form, Dr. Estock described the claimant's impairment(s) as "not severe."  Dr. Estock diagnosed the claimant with anti-social personality disorder, but indicated that the disorder did *not* fall within the following criteria: seclusiveness of autistic thinking; pathologically inappropriate suspiciousness or hostility; oddities of thought, perception, speech, and behavior; persistent disturbances of mood or affect; pathological dependence, passivity, or aggressivity; intense and unstable interpersonal relationships and impulsive and damaging behavior.  Dr. Estock remarked that the claimant alleged that his mental impairment was caused by years of incarceration.  Dr. Estock noted that the claimant was generally capable

---

[2]The court has already discussed Dr. Saxon's physical findings, but he also commented regarding claimant's mental limitations.

with a normal mood and normal mental abilities during the exam; noted that no apparent limitation would preclude the claimant from any type of work that "he might be interested in"; and noted that the claimant's allegation was "partially credible at best." (R. 198-211).

*The ALJ Hearing*

The Commissioner denied the claimant's application for supplemental security income on February 9, 2008. (R. 57). The claimant requested a hearing before an ALJ, and the ALJ held the hearing on July 8, 2010. (R. 35).

The claimant testified that he had a ninth grade education and that he had been married for fifteen years.  The claimant further testified that he had been in prison from 1994-2003 and again from 2004-2008.  The claimant reported that while in prison he completed a six-month drug rehabilitation program. (R. 37-41).

The claimant reported that the last year he had earnings was in 2003 when he worked as a janitor at Mercedes and also as a drill operator. The claimant testified that his only other earnings were in 1993 when he was employed by a carpet warehouse. The claimant then testified that he self-reported income for 2009 that he did not earn. (R. 41-43). The claimant testified that he was told by "the guy next door" that he could make up a job and file self-employment, and that the neighbor knew a girl that "could get [him] some money." (R. 44).

The claimant reported that he was on excellent standing with probation and in compliance with all of his drug screenings. The claimant also acknowledged that at the time he applied for supplemental income, his attorney explained that little medical evidence supported his application. The claimant then testified, however, that over the past year doctors treated his back pain with Lortab, Mobic, Tylenol, Ibuprofen, and heating pads.  (R. 45-46).

11

The claimant reported that his treating physician planned to refer him to a neurologist for pain management, but the referral had not occurred at the time of the hearing. The claimant testified that his MRI showed that he had a problem consisting of his spine "laying over on a bone . . . causing some of [his] discomfort."  His physicians told him that the only way to correct his problem was with surgery. (R. 46-48).

The claimant testified that his chronic back pain forced him to sit, lay, or use a recliner. The claimant testified that he could not sit upright for longer than approximately fifteen minutes without his back "stiffen[ing] up," and that he also could not stand for extended periods of time. He asserted that he tried one time to rake the leaves in his yard, and "couldn't hardly get out of bed" the next day.  The claimant testified that heavy lifting or any activity that involved moving his back caused him similar pain.  The claimant reported that the only time he was pain free was while he slept. (R. 49-50).

The claimant stated that he did not engage in any hobbies or meaningful activity and that he really didn't do anything besides "sit around."  He testified that his wife paid the bills and that he did not write checks.  The claimant also testified that he "probably [could] read pretty well." He stated that he had hepatitis C and that his doctors suspected that the cause might have been a blood transfusion for an stab wound years prior. (R. 49-50).

The claimant testified that he was not seeking work because he did not know of anything he could do.  He reported that he rejected a job offer as a roofer because he did not feel that he could do the work. He also testified that most of his day was spent watching television inside or sitting on his front porch.  He stated that he might occasionally sweep the porch or straighten the house but that was his only involvement in housework or yardwork. (R. 51).

The ALJ then examined the vocational expert Dr. William Crunk.[3]  Dr. Crunk testified that the claimant had two sources of income in the previous fifteen years:  industrial cleaner and oil field laborer. Dr. Crunk classified these jobs as medium and unskilled.

The ALJ then asked Dr. Crunk to characterize claimant's age, education and past work experience. Dr. Crunk described claimant as a younger individual with limited education with a limited work background as an industrial cleaner and a laborer in an oil field, both of which are medium, unskilled work. The ALJ then asked Dr. Crunk what jobs could be performed by someone with the claimant's same age, education, and work history, who could perform light exertion with a sit/stand option, in a temperature-controlled environment without exposure to unprotected hazards. Dr. Crunk stated that significant numbers of jobs exist  in the national economy at the light unskilled level that such a person might perform, including assembler; parts inspector; and a machine tender in plastics. (R. 52-54).

Next, Dr. Crunk testified that depending on the intensity and degree of pain, chronic pain would have a significant vocational impact.  Dr. Crunk testified that if pain interfered with persistence and pace of the job or produced absenteeism from the job, then such pain that would have significant vocational impact. (R. 54-55).

*The ALJ's Decision*

On August 19, 2010, the ALJ issued a decision finding that the claimant was not disabled under Section 1614(a)(3)(A) of the Social Security Act and denying his application for a period of supplemental security income. (R. 29).  Before announcing her findings of fact, the ALJ

---

[3]  The record refers to the vocation expert as "Dr. Crunk" and "Dr. Krunk."  The court will refer to him as Dr. Crunk.

13

described in great detail the five-step sequential evaluation process that would be the basis of her analysis. (R. 21).

First, the ALJ found that the claimant had engaged in no substantial gainful employment since June 24, 2008, the alleged onset date of his disability.

Next, the ALJ found that the claimant had the following severe impairments: "lumbar degenerative disc disease, hepatitis C, and anti-social personality disorder not severe." (R. 22). Although the claimant complained of severe back pain, the ALJ found that the claimant's pain was not an impairment that met one of the listed impairments and was not totally disabling. Specifically, the ALJ found that the claimant's degenerative disc disease, individually or in combination with another impairment, did not include compromise of a nerve root or the spinal cord. The ALJ also found no evidence that indicated chronic liver disease or weight loss due to any digestive disorder. *Id.*

Rating the claimant's severity of mental impairment, the ALJ found that the claimant's mental impairment did not satisfy listing 12.08 "paragraph B" criteria, finding that the claimant had no restriction in his activities of daily living and a mild restriction in social functioning. The ALJ also noted that the claimant had no difficulties with concentration, persistence, or pace. (R. 23). The ALJ found that the claimant experienced no episodes of decompensation for an extended duration.

The ALJ then undertook a detailed analysis to determine the claimant's residual functional capacity (RFC). The ALJ concluded that the claimant has the RFC to perform light work with the option to sit or stand, in a temperature-controlled environment and without exposure to unprotected heights. In making the finding, the ALJ considered all symptoms and the

14

extent to which objective medical evidence and opinion evidence supported those symptoms. The ALJ held that while the claimant's medically determinable impairments could be reasonably expected to produce the alleged symptoms, the claimant's statements regarding the limiting effects, intensity, and persistence of his symptoms were not credible to the extent that they differ from the claimant's RFC.

The ALJ acknowledged that the claimant was in prison from 1982 to 1994 and from 2004 to 2008. The ALJ noted that the claimant worked in the past as a sweeper/mopper and as a laborer. The ALJ also noted that the claimant was not seeking current employment because "there is nothing he can do." (R. 24).

Further, the ALJ noted that while the claimant testified that he suffers from chronic back pain and hepatitis C, he was told that surgery would help his back and was referred to a pain management clinic. Also, the ALJ noted that the claimant sweeps the porch and straightens up around the house. (R. 23).

The ALJ articulated that Dr. Raj Phoha diagnosed the claimant with an anti-social personality disorder and noted psychological stressors including legal problems; no steady income; and a history of drug and alcohol abuse. Dr. Phoha assigned the claimant a global assessment of functioning (GAF) score of 70. The ALJ articulated that a GAF of 70 indicates mild symptoms including depressed mood; mild insomnia; and some difficulty in social, occupational, or school functioning. The ALJ also articulated, however, that the claimant should generally function "pretty well" and develop meaningful relationships. (R. 24). The ALJ noted that the claimant denied ever being treated for any kind of mental illness and that Dr. Phoha observed that the claimant had a history of alcohol, marijuana, cocaine, and other drug use

15

beginning at age 12. The ALJ further indicated that the claimant successfully completed a drug treatment program while he was incarcerated.

The ALJ noted that consultative physician, Dr. James Saxon, examined the claimant and indicated that the claimant reported having auditory hallucinations; that X-rays of the claimant's spine showed nothing outside normal limits; and that the claimant's range of motion was within normal limits. The ALJ indicated that Dr. Saxon diagnosed the claimant with lower back pain and a history of auditory hallucinations. (R. 25).

The ALJ next noted that the claimant had sought no medical treatment prior to August 20, 2008 for his for low back pain and that his x-rays from August 2008 indicated that he had minimal disc degeneration and no other significant findings. Moreover, the ALJ noted that the claimant failed to show for an appointment in November 2008, and was next seen on May 21, 2009, when he again complained of back pain. The ALJ noted that the claimant also indicated that he was notified that he may have hepatitis C and lab results confirmed the diagnosis in May 2009. In June, claimant went for a follow-up visit and was scheduled for an MRI. (R. 25).

The ALJ next noted that UAB Division of Infectious Diseases evaluated the claimant on June 18, 2009 and concluded that without therapy the claimant was at risk of having advanced fibrosis with progression to cirrhosis or end stage liver disease during his lifetime.

Next, the ALJ articulated that on September 3, 2009, Dr. Allen first examined the claimant on a follow-up visit and noted that the claimant stated that he was eating and feeling well and that his back continued to hurt. The ALJ noted that, after only two appointments with the claimant, Dr. Allen opined that the claimant was unable to sustain an eight-hour work day and that his conditions were expected to last a year or longer at the current level of severity. The

ALJ indicated that Dr. Allen did not explain how his determination was made; did not indicate which impairment or combination of impairments he was referring to; and did not refer to any specific functional limitations that would normally be a basis for such a medical source opinion. (R. 26). The ALJ found that Dr. Allen's opinion was unpersuasive and conclusory because it was unsupported by the record.

The ALJ then noted Dr. Allen's next examination of the claimant in February 2010 where Dr. Allen recommended an MRI. The claimant's MRI showed lumbar degenerative change at L3-L4 with broad-based disc bulge contacting the nerve root in the far lateral space; and at L4-L5 broad-based disc bulge with mild bilateral neural forminal narrowing, right greater than left. (R. 26). The ALJ noted that the medical records indicate that the claimant was referred for pain management and neurosurgery on March 19, 2010.  (R. 25-26).

The ALJ also noted that on April 4, 2010 the claimant had lost 18 pounds since September 2009.  The ALJ noted that Dr. Allen indicated that the claimant's change in smoking habit may have caused his recent weight loss. (R. 26). The ALJ noted that the claimant did not show for his appointment on May 11, 2010 but that Dr. Allen assessed the patient on May 14, 2010.

Next, the ALJ discounted the claimant's statements concerning his daily limitations and disabling pain. The ALJ concluded that although the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms, his statements were not credible to the extent they were inconsistent with the claimant's RFC assessment and objective medical evidence. First, the ALJ noted that the claimant's alleged daily activities are not supported by evidence and cannot be verified with any reasonable degree of certainty.  Secondly,

the ALJ indicated that even if the claimant's daily activities were as limited as he alleged, insufficient medical evidence in the record attributes the degree of those limitations to his medical condition.

The ALJ then documented the claimant's conflicting testimony. For example, the ALJ noted that the claimant fraudulently reported self-employment income from a "salvage business" but also reported to Dr. Saxon that he made no attempt to find work.  The ALJ noted that the claimant admitted to filing a false tax return for 2009. The ALJ also noted that the claimant reported that his back pain affected his ability to sleep, but later testified that he was pain free when he slept. (R. 27). The ALJ articulated that the claimant made infrequent trips to the doctor and that the totality of his behavior indicated a manageable level of pain inconsistent with disabling pain. (R. 26-27).

Next, the ALJ articulated that although the claimant initially reported an inability to concentrate, when Dr. Phoha interviewed the claimant, he reported no hallucinations or delusions. The ALJ further noted, however, that Dr. Phoha observed that the claimant had a fair level of attention and concentration. The ALJ also indicated that the claimant reported no medical problems besides back pain to Dr. Phoha. The ALJ next noted that six days after his visit with Dr. Phoha, the claimant reported to Dr. Saxon that his back "essentially felt normal," but that he had auditory hallucinations and had difficulty staying focused. (R. 27).

The ALJ concluded that the claimant could not perform his past jobs as an industrial cleaner or laborer, because both are classified as medium level exertion that exceeds the claimant's RFC to perform light work with limitations.  The ALJ found that given the testimony of the vocational expert and considering the claimant's age, education, work experience, and

residual functional capacity, the claimant is capable of making a transition to other work at the light, unskilled level with some limitations.  The ALJ noted that jobs meeting these qualifications exist in significant numbers in the national economy that the claimant could perform, including working as an assembler, inspector, and machine tender in plastics. Therefore, the ALJ concluded that a finding of "not disabled" was appropriate.  (R. 28).

## VI. DISCUSSION

### 1. The ALJ properly applied the Eleventh Circuit's pain standard

The claimant alleges that the ALJ improperly applied the Eleventh Circuit's pain standard and improperly discredited the claimant's subjective testimony regarding his limitations. This court finds that the ALJ properly applied the Eleventh Circuit's pain standard and properly discredited the claimant's own testimony by referring to his own conflicting testimony.

When a claimant attempts to establish his disability through testimony of subjective symptoms, the Eleventh Circuit's pain standard applies. The pain standard requires a showing of

> (1) evidence of an underlying medical condition; and *either*
> (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or*
> (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (emphasis added); *see also Holt*, 921 F.2d at 1223. The ALJ is not required to recite the pain standard verbatim, but must make findings indicative of a correct application of the standard. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). When the ALJ decides to discredit the claimant's testimony of pain, he must do so explictly, and with adequate reasons. *Id.*

In her decision, the ALJ correctly applied the Eleventh Circuit's pain standard to the facts in this case. The ALJ found that the claimant did have medically determinable impairments that could reasonably be expected to cause the claimant's pain. The ALJ, however, properly discredited the claimant's personal testimony as being against the great weight of medical evidence in the record. The ALJ articulated that regarding the claimant's alleged limitations stemming from his hepatitis C, the claimant reported to Dr. Allen that he felt great and was eating well.  Also, the ALJ specifically noted that the claimant's weight was within normal limits.

Regarding his back pain, the ALJ articulated that no objective or subjective evidence existed in the medical record to reflect the degree of pain asserted by the claimant.  The ALJ noted that the record reflects infrequent trips to the doctor for his back pain considering the level of pain alleged by the claimant in his testimony.  The ALJ noted that during a visit to Dr. Saxon in September 2008, the claimant indicated that his back "essentially feels normal."  (R. 192).

In explaining why she was discrediting the claimant's subjective testimony, the ALJ also referred to the claimant's daily activities, including sweeping the porch and cleaning, and noted that such activities are inconsistent with the severity of pain alleged by the claimant.  The ALJ also pointed to the claimant's testimony that he fraudulently reported self-employment income as a reason to discredit his testimony. Moreover, the ALJ pointed out that Dr. Phoha noted no delusions or hallucinations during the September 3, 2008 visit, but six days later, the claimant told Dr. Saxon that he experiences auditory hallucinations.

In identifying specific portions of the claimant's medical records, and referring to the claimant's own testimony about his limitations, the ALJ properly articulated explicit, adquate

reasons to discredit the claimant's pain testimony. Also, the ALJ properly discredited the claimant's testimony by weighing both the medical findings of the consulting physician supported by objective medical evidence in the record, and his conflicting testimony regarding various ADLs and times of relief. Thus, the ALJ correctly applied the Eleventh Circuit's pain standard, and this court finds that substantial evidence supports his findings.

   *2. The ALJ did not err in rejecting Dr. Allen's opinion and had no duty to re-contact him*

   Next, the claimant argues that the ALJ improperly rejected treating physician Dr. Allen's opinion and erred by failing to re-contact him for clarification of his opinion. The court disagrees and finds that the ALJ properly discredited Dr. Allen's opinion based on the sufficient information before her and had no duty to re-contact him.

   The ALJ must give treating physicians substantial weight, and may only credit the opinion of a consultative physician above that of a treating physician for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists if (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate her reasons. *Id.*

   The ALJ properly rejected the treating physician Dr. Allen's opinion for good cause. While the ALJ did not explicitly state that she rejected Dr. Allen's opinion, she provided adequate reasons for her conflicting conclusion regarding the claimant's disability.  The ALJ articulated that Dr. Allen's opinion contradicts the objective medical evidence in the record

21

indicating that the claimant is not disabled.  The ALJ noted that the claimant's MRI showed

lumbar degenerative change with broad-based disc bulge, but that referrals for neurosurgery and

pain management were in place. The ALJ also noted that after only two appointments over four

months of treating the claimant, Dr. Allen opined that the claimant was unable to sustain an

eight-hour work day but provided no explanation as to his basis for that opinion. Further, the ALJ

articulated that Dr. Allen failed to document which impairment or impairments caused the

claimant to be unable to sustain an eight hour day. Lastly, the ALJ noted that Dr. Allen failed to

note any specific functional limitations that would impair the claimant's ability to sustain an

eight hour work day.  (R. 26).  This court finds that the ALJ articulated specific reasons for

discrediting Dr. Allen's opinion and substantial evidence supports the ALJ's decision.

The claimant also argues that the ALJ failed to assign any weight to the opinions of Dr.

Phoha and Dr. Saxon, the consulting physicians.  The ALJ must state with particularity the

particular weight given to different medical opinions. *Sharfarz v. Bowen*, 825 F.2d 278, 279

(11th Cir. 1987). "When, however, an incorrect application of the regulations results in harmless

error because the correct application would not contradict the ALJ's findings, the ALJ's decision

will stand." *Caldwell v. Barnhart*, 261 Fed. Appx. 188, 190 (11th Cir. 2008).

While the ALJ discussed the findings of Dr. Phoha and Dr. Saxon, she did not state the

weight she afforded their opinions as consulting physicians. The court, however, finds that the

ALJ's error was harmless because the consulting physician's opinions do not contradict the

ALJ's conclusion, and because the only part of the record that is inconsistent with their opinions

is the opinion of Dr. Allen, which the ALJ explicitly explained away. Both physicians diagnosed

the claimant with lower back pain and noted the claimant's alleged mental limitations. Neither

22

Dr. Phoha nor Dr. Saxon found the claimant to be totally disabled and unable to work. Furthermore, in making her decision, the ALJ primarily relied on claimant's own statements to Dr. Phoha and Dr. Saxon, not the actual conclusions of the doctors themselves. Even assuming the ALJ explicitly assigned weight to Dr. Phoha and Dr. Saxon's opinions, the ALJ's determination would have been the same.

### 3. *The ALJ properly considered the combination of the claimant's impairments*

Next, the claimant alleges that the ALJ failed to consider the combination of claimant's impairments. Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled. *Jones v. Dept of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991). When the ALJ considers a claimant's impairments only separately, such failure to follow regulations require remand for further consideration. *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984).

This court finds that the ALJ properly considered the claimant's combined impairments in making her determination. The ALJ noted that the evidence did not establish that the claimant's impairments "individually or in combination" met the severity of impairment in Appendix 1, Subpart P, of 20 CFR 404. The ALJ articulated that the claimant's lumbar degenerative disease, individually or in combination with another impairment, did not indicate a listed impairment. The ALJ also documented in detail the claimant's hepatitis C diagnosis, and clearly considered this impairment in combination with the claimant's other impairments in making her determination that the claimant is not disabled. (R. 25). Additionally, the ALJ specifically indicated that she considered the claimant's limitations under "paragraph B" of the

mental function analysis in making her determination.  (R. 23). As such, the court finds that the ALJ properly considered the claimant's combination of impairments in making her determination that the claimant is not disable.

## VII. CONCLUSION

For the reasons stated, this court finds that the decision of the Commissioner is supported by substantial evidence and that she applied the correct legal standards. For these reasons, the court concludes that the decision of the Commissioner is to be AFFIRMED. The court simultaneously will enter a separate Order to that effect.

DONE and ORDERED this 25th of September, 2013.

_____

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE